UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

N⁰ 10 Civ. 4003 (RJS)

ALAIN LUSTIG,

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

OPINION AND ORDER
December 8, 2010

RICHARD J. SULLIVAN, District Judge:

Petitioner Alain Lustig ("Petitioner") moves for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside or correct the 28-month sentence imposed on him by then-District Judge Denny Chin on December 10, 2009. For the reasons that follow, the petition is DENIED.

I. BACKGROUND

A. Indictment and Guilty Plea

On August 1, 2007, Petitioner and five co-defendants were named in a complaint filed by the United States Attorney's Office for the Southern District of New York. An indictment filed on November 8, 2007 and superseded on May 14, 2009 charged Petitioner and his co-defendants with securities fraud and conspiracy to commit securities fraud, wire fraud, and commercial bribery.

On May 22, 2009, Petitioner pled guilty to Counts One and Two of the superseding indictment pursuant to a plea agreement. Count One charged Petitioner with conspiracy to commit securities fraud, wire fraud, and commercial bribery in violation of 18 U.S.C. § 371. Count Two charged Petitioner with commission of securities fraud, in violation of 15 U.S.C. § 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.

The plea agreement, a six-page document dated May 18, 2009 and signed by Petitioner, his attorney, and representatives of the United States Attorney's Office, contained several key provisions regarding the application of the United States

Sentencing Guidelines ("Guidelines") and Petitioner's right to appeal. (*See* Resp.'s Mem. of Law in Opp'n to Def.'s Mot. to Vacate, Set Aside, or Correct His Sentence, Ex. A, filed Aug. 21, 2010 ("Plea Agreement").) With respect to the Guidelines calculations, the parties stipulated to an offense level of 22, including a 12-level enhancement because the loss associated with Petitioner's crime exceeded $200,000. (*Id.* at 3.) The parties also agreed that, based on this offense level and Petitioner's lack of criminal history, the appropriate Guidelines range was 41 to 51 months' incarceration. (*Id.*) According to the plea agreement, a sentence within this stipulated Guidelines range would constitute a reasonable sentence in light of all the factors set forth in 18 U.S.C. § 3553(a). (*Id.* at 4.) Although the parties agreed not to seek downward or upward departures from the stipulated range, the plea agreement permitted them to request imposition of a sentence outside of the range. (*Id.* at 3-4.)

The plea agreement also contained a waiver of Petitioner's right to appeal or otherwise challenge his sentence. Specifically, Petitioner agreed not to file any direct appeal or seek any adjustment of his sentence pursuant to 28 U.S.C. §§ 2241 or 2255, as long as the sentence imposed was within or below the stipulated range of 41 to 51 months. (*Id.* at 5.) Likewise, the government agreed not to appeal any sentence within or above the stipulated Guidelines range. (*Id.*) The parties acknowledged that the sentence to be imposed on Petitioner would be determined solely by the sentencing court, and that the United States Attorney's Office did not make any promises or representations as to what sentence he would receive. (*Id.* at 4-5.) Finally, Petitioner acknowledged that the plea agreement "supersede[d] any prior understandings, promises, or conditions between [the United States Attorney's Office] and [himself]. (*Id.* at 6.)

During Petitioner's May 22, 2009 guilty plea, taken by the Honorable Gabriel W. Gorenstein, Magistrate Judge, Petitioner indicated that he was satisfied with his attorney's representation of him. (Plea Tr. at 4:13-15.) In addition, he represented to Judge Gorenstein that he had read the plea agreement, discussed it with his attorney, and understood it. (*Id.* at 10:7-19.) Judge Gorenstein inquired whether, apart from the plea agreement, "any promises had been made to [Petitioner] in order to get [him] to plead guilty;" Petitioner responded "[n]o." (*Id.* at 10:20-23.) Petitioner acknowledged that, under the terms of the plea agreement, if he were to receive a sentence of 51 months or less, he would forfeit his right to challenge that sentence either through a direct appeal or through a writ of habeas corpus. (*Id.* at 11:21-12:1). Petitioner then stated that his guilty plea was made of his own free will. (*Id.* at 12:8-10).

B. Sentencing

At Petitioner's December 10, 2009 sentencing, his attorney, Patrick Joyce ("Joyce"), urged Judge Chin to impose a non-incarceratory sentence in order to (1) avoid sentencing disparities with respect to several of Petitioner's co-defendants who had not received prison time, and (2) meet the objectives of 18 U.S.C. § 3553(a). (Sentencing Tr. 14:6-18:17.) Without formally objecting to the Guidelines calculation, Joyce noted that Petitioner's $202,935.89 loss amount barely eclipsed the $200,000 threshold associated with a 12-

2

level enhancement,[1] and that a portion of the loss was incurred by individuals who chose to write letters on behalf of Petitioner, such as his mother. (*Id.* at 15:11-16:3.) The government objected to Petitioner's request for a non-Guidelines sentence. (*Id.* at 21:17-18.) Judge Chin thereafter imposed on Petitioner a below-Guidelines sentence of 28 months' imprisonment, restitution in the amount of $202,935.89, and forfeiture in the amount of $15,000. Following sentencing, Petitioner did not file a notice of appeal or otherwise pursue a direct appeal.

C. The Petition

Petitioner filed this habeas corpus petition on May 14, 2010. The petition asserts three primary bases for relief: (1) that the plea agreement waiving Petitioner's right to appeal was not made knowingly, voluntarily, and intelligently; (2) that Petitioner received ineffective assistance of counsel; and (3) that Petitioner was subject to an unconstitutional sentencing disparity in comparison to other co-defendants who had pleaded guilty but received probationary sentences.

Specifically, Petitioner contends that his guilty plea and appeal waiver were "obtained by a plea agreement which was not made knowingly, voluntarily intelligently, or with knowledge of the consequences of the plea agreement." (Pet. at 3.) Although Petitioner does not deny that he was, in fact, guilty of the crimes charged, he alleges that his lawyer "made [him] sign" the plea agreement, which he did not understand. (*Id.*) Petitioner further contends that his attorney did not inform him that he was waiving his right to an appeal by entering into the plea agreement. (*Id.* at 2.)

In support of his ineffective assistance of counsel claim, Petitioner claims that Joyce improperly acquiesced in Judge Chin's miscalculation of the loss amount, which erroneously included the $26,000 loss experienced by his mother, despite her desire that it not be counted in the overall loss amount. (*Id.* at 1.) In this regard, Joyce purportedly advised Petitioner that his mother's contemplated letter to the sentencing court to "remove that loss amount . . . didn't matter." (*Id.*) Petitioner further argues that his restitution should have been reduced by the same $26,000 and an additional $75,000 that had been paid to a claimant by Petitioner's former employer. (*Id.*)

Moreover, Petitioner claims that Joyce informed him that he had a prior "verbal agreement with the prosecutor, that the prosecutor would not object to an out-of-guideline sentence." (*Id.* at 2.) After the prosecutor in fact opposed Joyce's request for a non-incarceratory sentence at sentencing, Petitioner's counsel allegedly failed to object to the prosecutor's "breach of [this] understanding." (*Id.*) Petitioner also complains that his attorney "did not say a word on [his] behalf . . . at sentencing," and subsequently dissuaded Petitioner from filing an "earlier appeal" of the imposed sentence. (*Id.*)

Petitioner's third basis for relief concerns a disparity between the sentences imposed on him and on his two co-defendants, both of whom pleaded guilty and received probationary sentences. Petitioner contends that the loss amount attributed to the other co-defendants was

---

[1] *Compare* U.S.S.G. § 2B1.1(b)(1)(F) (2009) (imposing a 10-level enhancement for a loss amount exceeding $120,000) *with* § 2B1.1(b)(1)(G) (imposing a 12-level enhancement for a loss amount exceeding $200,000).

3

"the same or close" to his loss amount and that the sentencing court should not have relied on the testimony of an allegedly biased cooperating witness about Petitioner's greater involvement in the crime compared to the other co-defendants. (*Id.* at 4-5.)

### D. Post-Petition Submissions

On August 26, 2010, the Court directed Petitioner's trial counsel to submit an affirmation to the Court responding to the allegations contained in the petition. The Court received that submission on September 7, 2010.

On August 27, 2010, the Court received an additional submission from Petitioner, captioned "addendum to § 2255 motion," which contained supplemental information about the sentences received by his co-defendants and a corrected version of page two of his original petition omitting a typographical error.

On October 15, 2010, Petitioner filed both a responsive submission to his trial counsel's affidavit and a "Supplemental Memorandum to § 2255 Motion" in support of his sentencing disparity claim, contrasting his 28-month sentence with the 18-month sentence imposed on a third co-defendant.

## II. DISCUSSION[2]

Section 2255 allows a prisoner sentenced by a federal court to "move to have that sentence vacated, set aside or corrected if he . . . claims that the court, in sentencing him . . . , violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him . . . beyond the maximum time authorized by law." *Thai v. United States*, 391 F.3d 491, 493 (2d Cir. 2004). Relief under Section 2255 is narrowly limited to only these circumstances, however, in order to reflect "a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place . . . ." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995).

### A. Waiver of Appeal

As a threshold inquiry, the Court must determine whether the instant petition is precluded by the waiver of appeal provision in Petitioner's plea agreement. Although courts narrowly construe agreements that waive appellate rights, *see, e.g., United States v. Tang*, 214 F.3d 365, 368 (2d Cir. 2000), the Second Circuit has recognized the benefits derived by permitting such agreements. *See United States v. Quinones*, 511 F.3d 289, 323 (2d Cir. 2007) (noting that plea agreements permitted the defendant and the government "to allocate risk, to obtain benefits, to achieve finality and to save resources.") (citation omitted). "While the defendant gains limited exposure at sentencing, the Government expends fewer resources. The benefit of the bargain is lost when a defendant can nonetheless collaterally attack his sentence." *Melicharek v. United States*, No. 09 Civ. 8542 (SAS), 2010 WL 1948492, at *2 (S.D.N.Y. May 13, 2010). Accordingly, "[a] defendant's knowing and voluntary waiver of his right to appeal a conviction and sentence within an agreed upon guideline range is enforceable." *United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009).

---

[2] The Court concludes that an evidentiary hearing is not necessary. Petitioner's multiple submissions, the government's response, the affidavit submitted by trial counsel, and the transcripts and records from the underlying criminal case provide ample basis for the Court to deny the petition. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

4

A corollary to the rule that "knowing and voluntary" waivers of appellate rights will be enforced is that those waivers obtained in a defective manner will not be. As the Second Circuit has recognized, "[a] defendant who executes a waiver may sign away the right to appeal, but he or she does not sign away the right to the effective assistance of counsel." *Campusano v. United States*, 442 F.3d 770, 777 (2d Cir. 2006). Thus, although "the underlying plea agreement's waiver of appeal and collateral attack would ordinarily preclude review, a defendant 'who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by that plea.'" *Sharpley v. United States*, 355 F. App'x. 488, 490 (2d Cir. 2009) (citing *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002).) "To the extent that the appellant's claim here is based on allegedly defective advice from his defense attorney to plead guilty, 'it connects the alleged ineffectiveness of [defendant's] attorney with the voluntary nature of his plea.'" *Id.* (citing *Parisi v. United States*, 529 F.3d 134, 139 (2d Cir. 2008).) Accordingly, the Court must determine whether Petitioner received ineffective assistance of counsel with respect to his decision to enter into the plea agreement and subsequently plead guilty.

A claim of ineffective assistance of counsel is analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To prevail on an ineffective assistance claim, Petitioner must demonstrate that "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Contino v. United States*, 535 F.3d 124, 128 (2d Cir. 2008). In analyzing the performance of Petitioner's attorney, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

In this case, there is no question that Petitioner "knowing[ly] and voluntar[ily]" waived his right to collaterally attack his sentence. Although Petitioner contends that he only signed the plea agreement "because he was told to do so by his lawyer," that he "did not know what he was signing," and that he did not "understand the consequences (particularly with regard to waiving appeal rights)" (Pet. at 3), the record belies these self-serving statements. *See Melicharek*, 2010 WL 1948492, at *3 (rejecting similar assertions on the basis of record and attorney affidavit). During Petitioner's May 22, 2009 guilty plea, he assured Judge Gorenstein that he was satisfied with his counsel (Plea Tr. at 4:13-18) and confirmed that he had read the plea agreement, discussed it with his attorney, and understood it (*id.* at 10:7-19). Moreover, Petitioner stated that he understood that, by pleading guilty, he was giving up his right to appeal or seek habeas relief if he was ultimately sentenced to 51 months or less. (*Id.* at 11:21-12:1.)[3]

The record thus demonstrates that Petitioner received effective assistance of counsel with respect to his plea agreement and decision to plead guilty, both of which were undertaken knowingly, voluntarily, and

---

[3] Each of these statements is confirmed by Petitioner's attorney, who avers that he fully explained the plea agreement to Petitioner and believed that Petitioner understood that he was waiving his right to seek appellate or habeas relief in the event of a Guidelines or below-Guidelines sentence. (Aff. of Patrick Joyce, filed Sept. 7, 2010 ("Joyce Aff.") at 2.)

intelligently. The plea agreement's waiver of appellate rights is enforceable. Accordingly, all of Petitioner's claims, other than those alleging ineffective assistance of counsel in other aspects of Petitioner's conviction, are deemed waived through his plea agreement.[4]

B. Ineffective Assistance of Counsel

As explained above, Petitioner's "claim of ineffective assistance of counsel is not waived through his plea agreement," *Mora v. United States*, No. 08 Civ. 3826 (BSJ), 2010 WL 2607209, at *5 (S.D.N.Y. June 29, 2010), and may be raised for the first time in a Section 2255 petition rather than in a direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Because Petitioner filed his petition *pro se*, the Court reads "his submissions broadly so as to determine whether they raise any colorable legal claims." *Parisi*, 529 F.3d at 139. Nevertheless, Petitioner's claims that his attorney provided ineffective assistance in other aspects of his conviction are without merit.

First, Petitioner argues that both the Guidelines calculation and forfeiture amounts ascribed to him were overstated and that his lawyer provided deficient assistance in failing to correct these errors. Specifically, he contends that the sentencing court should have excluded $26,000 from the overall loss amount pursuant to U.S.S.G § 2B.1.1(b)(1)(G) because the victim, his mother, did not want it included. (Pet. at 1.) Petitioner further argues that $75,000 of loss that his firm had already paid to a claimant should be excluded from the restitution amount. (*Id.* at 1-2.)

Petitioner's first argument, that a victim can direct the sentencing court not to apply her loss to a defendant's Guidelines calculations, finds no support in the Guidelines or cases that apply them. Actual loss is defined in the comments section of the Guidelines as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1., comment n. 3(A)(1) (2009). An exception for victims who do not wish their loss to be counted does not appear under the commentary sections for "exclusions from loss" or "credits against loss." *Id.*, comment n. 3(D)-(E). Accordingly, the Court concludes that Petitioner's counsel's advice with respect to the loss amount was accurate and therefore cannot constitute ineffective assistance of counsel.

Petitioner's argument regarding restitution is equally without merit. Title 18, United States Code, Section 3664, the statute which required Petitioner to pay restitution, mandates that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). It further states that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered

---

[4] Any such claims are also procedurally barred because they were not raised on direct appeal. *See Zhang v. United States*, 506 F.3d 162, 166 (2d. Cir. 2007). To overcome this procedural defect, Petitioner must show "(1) cause for the failure to bring a direct appeal and actual prejudice from the alleged violations; or (2) actual innocence." *Id.* (internal quotation marks omitted). Petitioner does not contend that he is actually innocent of the crimes to which he pleaded guilty. Moreover, the Court finds Petitioner's only explanation for electing not to file a direct appeal – an alleged warning from his counsel that the government would retaliate against him by seeking a more severe sentence on its own appeal – to be unpersuasive. Thus, there is no legitimate "cause" for Petitioner's failure to file a direct appeal that would overcome the procedural bar.

6

in determining the amount of restitution." *Id.* § 3664(f)(1)(B). Rather, a court should direct that the insurer or third-party source of funds receive the restitution after all of the other victims have received theirs. *Id.* § 3664(j)(1). While Petitioner may, therefore, be required to render a portion of his restitution to his former firm, he is not entitled to a reduction of the total amount of restitution that he must pay.

Petitioner next alleges that his attorney provided ineffective assistance of counsel when he advised him that "there was a good chance [Petitioner] would receive probation" and that "the most [he] would receive would be a year and one day" in prison. (Pet. at 2, 4.) Petitioner's plea agreement and plea allocution belie these statements and render Petitioner's purported reliance on them unreasonable. The plea agreement explicitly stated that the sentence to be imposed upon Petitioner would be determined solely by the sentencing court and that the United States Attorney's Office did not make any promises as to the nature of that sentence. (Plea Agreement at 4-5.) Petitioner was well aware that no one, including his attorney, could guarantee that he would receive a specific sentence and that the plea agreement was not binding on the sentencing judge. (*See* Plea Tr. at 9:14-17.) He acknowledged at the plea allocation that no promises had been made to him in order to induce him to enter into the plea agreement. (*Id.* at 10:20-23.)

Moreover, counsel's alleged statements did not "affirmatively . . . prejudice" Petitioner. *Strickland*, 466 U.S. at 687-88, 693-94. Petitioner "admitted [his] guilt" and was sentenced below the applicable Guidelines range. (Pet. at 3.) Having already determined that Petitioner knowingly and voluntarily entered into the plea agreement, the Court finds no evidence that Petitioner received ineffective assistance of counsel as a result of counsel's alleged predictions of Petitioner's sentence.

Petitioner further alleges that his attorney failed to "say a word on Defendant's behalf" at sentencing, specifically with regard to Petitioner's role in the conspiracy. (*Id.* at 2.) This claim is plainly contradicted by the transcript of Petitioner's sentencing, which demonstrates that Petitioner's attorney did in fact make arguments regarding the relative culpability of Petitioner's co-defendants (*see* Sentencing Tr. 14:11-15:2), Petitioner's role in the offense (*see id.* at 17:8-13), and the loss calculation (*see id.* at 14:17-16:3).

Finally, the Court finds no merit in Petitioner's claim that he was dissuaded from filing an "earlier appeal," which the Court interprets to mean a timely notice of appeal that would have preserved Petitioner's procedural right to file a direct appeal. (*Id.* at 2.) Petitioner does not assert that he was prevented from filing a notice of appeal by his counsel. Instead, he contends he was advised by counsel that if he were to file an appeal, the government would retaliate by seeking an enlargement of his sentence on appeal. (*Id.*) His counsel, to the contrary, recalls offering to file a notice of appeal and merely "remind[ing] Mr. Lustig that the prosecutor was not bound by his agreement not to appeal the sentence, as the sentence imposed was below the Guideline Range" (Joyce Aff. at 3), which is an accurate description of the relevant provision of the plea agreement (*see* Plea Agreement at 5). Even assuming the truth of Petitioner's assertion that he was discouraged by his counsel from filing an appeal, the Court is unpersuaded that Joyce's conduct fell "below an objective standard of reasonableness." *Contino*, 535 F.3d at 128.

7

More to the point, Petitioner does not show how he was affirmatively prejudiced by his counsel's purported advice. *Strickland*, 466 U.S. at 693. By knowingly and voluntarily entering into the plea agreement, Petitioner waived his right to appeal any defects associated with his conviction other than ineffective assistance of counsel. Petitioner presents no evidence to indicate how he has been prejudiced by having to proceed collaterally on his remaining ineffective assistance claims as opposed to by filing a direct appeal. *See Massaro*, 538 U.S. at 500-501 ("[I]n most cases a motion brought under § 2255 is *preferable* to direct appeal for deciding claims of ineffective-assistance. When a claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record that is not developed precisely for, and is therefore often incomplete or inadequate for, the purpose of litigating or preserving the claim.") (emphasis added).

Accordingly, the Court concludes that Petitioner has failed to demonstrate ineffective assistance on the part of his counsel.

C. Sentencing Disparity

As explained above, Petitioner's argument relating to the disparity between his sentence and those of his co-defendants is waived by his plea agreement and procedurally barred by Petitioner's failure to raise it on direct appeal. *See, e.g., Ceballos v. United States*, No. 09 Civ. 5035 (FB), 2010 WL 3189907, at *2 (E.D.N.Y. Aug. 9, 2010) (concluding that sentencing-disparity argument was foreclosed by waiver of appellate rights contained in plea agreement). By virtue of his enforceable plea agreement, Petitioner waived his right to appeal a below-Guidelines sentence and agreed that a sentence within the stipulated 41 to 51 month Guidelines range would be reasonable in light of all the factors set forth in 18 U.S.C. § 3553(a). (Plea Agreement at 4.) Petitioner is thus precluded from arguing that his more lenient below-Guidelines sentence of 28 months constituted an unwarranted sentencing disparity in violation of Section 3553(a)(6).

Even if it were not waived, Petitioner's argument that he was disproportionately punished in comparison to his co-defendants misses the point of Section 3553(a)(6). It is well established in this Circuit "that section 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). "Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants." *Bokun*, 73 F.3d at 12. Petitioner does not argue that his sentence represents an unwarranted disparity with sentences imposed on similarly situated defendants nationwide, nor has he demonstrated extraordinary circumstances in this case giving rise to a constitutional violation.

In any event, Judge Chin readily distinguished Petitioner from his co-defendants by concluding that he was "more culpable than the others." (Sentencing Tr. 38:18-19; *see also id.* at 35:18-24 (noting that co-defendant James Doolan pled guilty "right away," had a significantly smaller $72,000 loss amount, and had already repaid most of the loss by the time of sentencing); *id.* at 36:1-6 (noting that co-defendant Ruben Serrano had ended his criminal activity four years before sentencing and had

worked hard to start a new, successful business).) Judge Chin found that Petitioner's "larger role in the operation" led him to become one of the "point persons" of the conspiracy. (*Id.* at 38:20-22.) The Court also factored into its determination the live testimony of one of Petitioner's victims who was found to have been "clearly t[aken] advantage of" by Petitioner. (*Id.* at 39:2-4.)

The Court therefore finds no merit in Petitioner's arguments based on the disparity between his sentence and those received by his co-defendants.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner effectively waived his right to collaterally attack his sentence and that, even if he did not, his claims would fail on the merits. In addition, the Court finds that Petitioner has failed to demonstrate that he received ineffective assistance of trial counsel. Accordingly, it is hereby ordered that the petition for a writ of habeas corpus is DENIED. Because Petitioner has not made a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: December 8, 2010
   New York, New York

* * *

Petitioner Alain Lustig represents himself and is incarcerated at FCI Fort Dix, Register # 60371-054, Camp, Bldg. 6695, P.O. Box 2000, Fort Dix, NJ 08640. Respondent United States of America is represented by Reed Michael Brodsky, United States Attorney's Office for the Southern District of New York, St. Andrew's Plaza New York, NY 10007.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/10
```